O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY OAKS PHYSICIANS SURGICAL CENTER, LLC, A California Limited Liability Company | CV 18-3866-RSWL-JPR |
| Plaintiff, | **ORDER re: Defendant's Motion to Dismiss Plaintiff's FAC** [19] |
| v. | |
| BLUE CROSS BLUE SHIELD OF ILLINOIS; and Does 1 through 100; | |
| Defendants. | |

Currently before the Court is Defendant Blue Cross Blue Shield of Illinois' ("Defendant") Motion to Dismiss Plaintiff's First Amended Complaint [19] ("Motion"). Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Defendant's Motion.

# I. BACKGROUND

## A. Factual Background

Plaintiff Beverly Oaks Physicians Surgical Center ("Plaintiff") is an ambulatory surgery center located in Sherman Oaks, California. First Am. Compl. ("FAC") ¶ 4, ECF No. 18. Defendant Blue Cross Blue Shield of Illinois ("Defendant") is a managed care company that, among other things, insures and/or administers employer health plans typically governed by ERISA. Id. ¶ 6. Defendant carries out its health insurance business activities in each state where covered employees and their dependents are located. Id. ¶ 8. Plaintiff brings this Action as the purported assignee of patients seeking recovery of ERISA benefits they allege Defendant owes them. Id. ¶ 56.

Plaintiff provided surgery center facility services to fourteen patients enrolled in health plans governed by ERISA. Id. ¶¶ 10, 15-16; id., Ex. F, ECF No. 18-6. Plaintiff alleges that each of these patients assigned his or her health benefits to Plaintiff and that Plaintiff submitted 27 claims to Defendant for the medical services provided to these patients. Id. ¶¶ 21, 46; id., Ex F. Plaintiff attached to its FAC a copy of its assignment agreement it sends to its patients. Id. ¶ 21; id., Ex. D., Financial Responsibility Agreement, ECF No. 18-4. Plaintiff alleges that Defendant failed to pay Plaintiff's full billed charges, and that as an assignee of these

benefits, it is entitled to recover additional payments from Defendant. Id. ¶ 56

Plaintiff is an "out-of-network" provider for each claim at issue and does not have a contract with Defendant. Id. ¶ 39. Plaintiff's custom was to contact a Defendant representative by telephone to discuss the proposed surgery in advance, and the representative would advise Plaintiff whether the surgery would be covered under that patient's plan. Id. Plaintiff alleges that at no time during any of these communications did Defendant indicate it would assert an "anti-assignment clause" in any ERISA Plan as a basis to bar payment. Id. ¶ 41. Plaintiff also alleges that neither did Defendant assert an anti-assignment clause during the administrative review phase, in which Defendant provided Explanations of Benefits ("EOBs") to Plaintiff to explain the underpayments or non-payments with respect to the claims submitted. Id. ¶¶ 47-48.

1.   Teamsters Plan

Plaintiff has identified 11 patients[1]—bringing 18 of the total claims in issue—as insured pursuant to the Teamsters Western Region & Local 177 Health Care Plan (the "Teamsters Plan"). FAC ¶ 14, 22. Plaintiff alleges that the Teamsters Plan was not available for its review prior to performing its services for Plan

---

[1] Patients A, B, C, D, F, G, H, I, J, L, and N are all covered under the Teamsters Plan. FAC ¶ 22.

members.  <u>Id.</u> ¶ 14.  Where plan documents may be publicly available, the documents open for review are Summary Plan Description documents ("SPDs") and not the ERISA Plan documents themselves.  <u>Id.</u> ¶ 14.  The SPD for the Teamsters Plan contains the following clause in a section titled "General Provisions": "Participants are generally responsible for notifying the Fund of changes in family circumstances.  Benefits are not assignable, although the Fund will honor qualified medical child support orders."  <u>Id.</u> ¶ 23.

    2.  <u>Woodward and Williams Lea Plans</u>

    The Woodward, Inc. Plan ("Woodward Plan") provides coverage for one patient identified as Patient M.  <u>Id.</u> ¶ 31; <u>id.</u>, Ex. F.  The Williams Lea Inc. Health Care Plan ("Williams Lea Plan") provides coverage for one patient identified as Patient K.  <u>Id.</u>  The SPDs for the two Plans contain substantially similar or identical language.  <u>Id.</u>  Each contain the following clause:

> A Covered Persons' claim for benefits under this Health Care Plan is expressly non-assignable and non-transferable in whole or in part to any person or entity, including any Provider, at anytime before or after Covered Services are rendered to a Covered Person . . . Any such assignment or transfer of a claim for benefits or coverage shall be null and void.

Declaration of Gayle Dissen ("Dissen Decl.") ¶ 5, ECF No. 19-1; FAC ¶ 32.  The SPDs for both also state that benefit payments to a Non-Participating Provider will be determined by a "policy fee schedule"; by the provider's usual and customary charge; or by some

"other method" as defined by the Plan, but does not state which of the three is to be used.  FAC ¶ 36.

     3.  <u>Patient E</u>

     Finally, Plaintiff has attached an Insurance Verification telephone record for Patient E, which identifies the employer of Patient E as UPS, Group #077323.  <u>Id.</u> ¶ 12.  Plaintiff also attached a letter from Blue Cross of California, confirming receipt of Plaintiff's appeal for Patient E.  <u>Id.</u> ¶ 13.  However, Plaintiff alleges that it has been unable to locate an applicable ERISA Plan document for Patient E.  <u>Id.</u> ¶ 14.

**B.**  <u>**Procedural Background**</u>

     Plaintiff filed its Complaint [1] on May 9, 2018 for recovery of benefits under ERISA.  Defendant filed a Motion to Dismiss [13] on August 6, 2018.  This Court granted Defendant's Motion to Dismiss with leave to amend [17] on November 8, 2018.[2]  Plaintiff filed its FAC [18] on November 29, 2018.  Defendant filed the instant Motion to Dismiss Plaintiff's FAC [19] on December 13, 2018.  Plaintiff timely opposed [24], and Defendant timely replied [25].

///

---

[2] The Court found that Plaintiff did not adequately allege standing to bring an ERISA claim on behalf of the patients, as 13 of the 14 patients' plans appeared to contain anti-assignment provisions, and Plaintiff did not allege the terms of or identify the remaining patient's plan (Patient E).  <u>See</u> Order 13:26-14:11, ECF No. 17.  The Court also found that Defendant did not adequately plead estoppel or waiver.  <u>Id.</u>

**II. DISCUSSION**

**A.    Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted.  A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)(quotation omitted). Dismissal is warranted for a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988)(citation omitted).

In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007).  A court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party. <u>Klarfeld v. United States</u>, 944 F.2d 583, 585 (9th Cir. 1991).  The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence to support the claims. <u>Jackson v. Birmingham Bd. of Educ.</u>, 544 U.S. 167, 184 (2005) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)).  While a complaint

need not contain detailed factual allegations, a plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). However, a complaint "should not be dismissed under Rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Balistreri</u>, 901 F.2d at 699 (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).

**B.  Discussion**

    1.  Request for Judicial Notice

    Plaintiff requests that the Court take judicial notice of a recent decision by another court in this district denying a motion to dismiss in a separate action involving Plaintiff.[3] Pl.'s Req. for Judicial Notice ("RJN") 1:27-2:6, ECF No. 26.  Because courts "may take judicial notice of undisputed matters of public record, including documents on file in federal

---

[3] <u>See</u> RJN, Ex. A, <u>Beverly Oaks Physicians Surgical Ctr., LLC v. California Physicians Servs.</u>, No. 18-cv-6407-RGK-RAO.  There, a district court denied the defendant's motion to dismiss finding that the defendant waived its right to assert an anti-assignment provision by paying some of Plaintiff's claims during the administrative process, and because each billing form had a checked box that informed defendant that Plaintiff was asserting the claim as an assignee.  The Court need not delve into distinguishing this case as it is merely persuasive authority, and as discussed later, several other courts, including the Ninth Circuit, have found that direct payment is insufficient to establish waiver.  <u>See</u>, <u>e.g.</u>, <u>Brand Tarzana Surgical Inst., Inc. v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Welfare Plan</u>, 706 F. App'x 442, 443 (9th Cir. 2017).

or state courts," the decision is appropriate for judicial notice.  <u>Harris v. Cty. of Orange</u>, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted). Thus, the Court **GRANTS** Plaintiff's Request for Judicial Notice.

   2.   <u>The Motion</u>

   Defendant argues that Plaintiff has not cured the deficiencies from the Court's prior Order, specifically that Plaintiff does not plead facts sufficient to overcome the purported anti-assignment provisions ("AAPs") and instead offers new legal theories it should have, but failed to raise, in response to Defendant's initial Motion to Dismiss.  Def.'s Reply 1:2-7, ECF No. 25.  Plaintiff now argues that the AAPs are invalid because (1) the Summary Plan Descriptions ("SPDs") do not constitute Plan documents and are not enforceable; and (2) the AAPs are ambiguous.  Def.'s Mem. 7:6-12, ECF No. 20.

   As a preliminary matter, Defendant argues that these new legal arguments are barred by the law of the case doctrine.  "Under the 'law of the case' doctrine, a district court is 'precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case,' unless exception to depart from the law of the case exists." <u>Folex Golf Industries, Inc. v. O'TA Precision Industries Co., Ltd.</u>, 700 Fed. App'x 738 (9th Cir. 2017) (citation omitted).  However, "the law of the

case rule does not bind a court as absolutely as res judicata, and should not be applied woodenly when doing so would be inconsistent with considerations of substantial justice." <u>Moore v. James H. Matthews & Co.</u>, 682 F.2d 830, 833-34 (9th Cir. 1982) (internal quotation marks and citations omitted). "'For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition.'" <u>In re Flashcom, Inc.</u>, 503 B.R. 99, 127 (C.D. Cal. 2013) (quoting <u>United States v. Jingles</u>, 702 F.3d 494, 499 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 1650 (2013)). Nonetheless, "[a]ll rulings of a trial court are 'subject to revision at any time before the entry of judgment.'" <u>United States v. Houser</u>, 804 F.2d 565, 567 (9th Cir. 1986) (citing Fed. R. Civ. Proc. 54(b)).

In granting Defendant's first Motion to Dismiss, the Court's finding that there is anti-assignment language in the Teamsters, Woodward, and Williams Lea SPDs was necessary to support the legal conclusion that Plaintiff lacked standing. However, whether the SPDs are enforceable and the AAPs are unambiguous was not at issue in the initial Motion to Dismiss. The Court merely made a preliminary statement that pursuant to Ninth Circuit law, "[n]otwithstanding any plausible allegations regarding standing, Plaintiff may lack standing if the relevant plans at issue here contain valid and unambiguous anti-assignment provisions."

Order at 6:4-7. The Court did not make an explicit legal determination that the AAPs are valid and unambiguous, and granted leave to amend for Plaintiff to provide Plan terms that may plausibly assert standing. Indeed, Plaintiff's original Complaint and Opposition did not include any allegations regarding the validity of the SPDs and AAPs. See Compl., ECF No. 1. Now, the FAC includes allegations that the SPDs are not Plan documents and that the AAPs are ambiguous. See FAC ¶¶ 14, 19, 29-30, 32, 35. The prior Order focused primarily on Plaintiff's arguments regarding waiver and estoppel, and to avoid any injustice, the Court will consider the merits of Plaintiff's new arguments.

Thus, the Court finds that the law of the case doctrine does not apply here because the enforceability of the SPDs and validity of the AAPs was not previously an issue fully argued and decided before the Court.[4] The Court will consider the merits of Plaintiff's arguments in turn below.

---

[4] Even if the law of the case doctrine did apply, this issue would fit in the manifest injustice exception because the arguments as to validity and ambiguity of the AAPs were not briefed for the Court in the initial Motion to Dismiss. See United States v. Cuddy, 147 F.3d 1111, 1114 (9th Cir. 1998) (holding that the exceptions to the doctrine include: (1) the first decision was clearly erroneous; (2) there has been an intervening change in law; (3) the evidence before the court when reconsidering the issue is substantially different; (4) there are other changed circumstances; or (5) a manifest injustice would result from applying the doctrine).

a.   *Enforceability of the SPD*s

      "To state a claim [for benefits under ERISA §
502(a)(1)(B)], plaintiff must allege facts that
establish the existence of an ERISA plan as well as the
provisions of the plan that entitle it to benefits.  A
plan is established if a reasonable person 'can
ascertain the intended benefits, a class of
beneficiaries, the source of financing, and procedures
for receiving benefits.'  Failure to identify the
controlling ERISA plans makes a complaint unclear and
ambiguous."  <u>Forest Ambulatory Surgical Associates,
L.P. v. United HealthCare Ins. Co.</u>, No.
10-CV-04911-EJD, 2011 WL 2748724, at *5 (N.D. Cal. July
13, 2011) (citations omitted).

        i.   *Teamsters, Woodward, and Williams Lea*

      Plaintiff does not allege the Plan terms that
entitle it to additional benefits for the Teamsters,
Woodward, or Williams Lea Plans.  Defendant instead
provided the SPD for each along with its Motion.  <u>See</u>
Dissen Decl., Exs. A-C, ECF No. 19-1.[5]  Plaintiff
alleges that the SPDs cannot be enforced as terms of
the ERISA Plans themselves, and thus any purported AAPs

---

      [5] In its prior Order the Court held that it can consider the
attached SPDs by means of the incorporation by reference
doctrine, which "permits a district court to consider documents
'whose contents are alleged in a complaint and whose authenticity
no party questions, but which are not physically attached to the
[plaintiff's] pleadings.'"  <u>Branch v. Tunnell</u>, 14 F.3d 449, 454
(9th Cir. 1994), *overruled on other grounds by* <u>Galbraith v.
County of Santa Clara</u>, 307 F.3d 1119 (9th Cir. 2002).

within the SPDs are invalid.  FAC ¶ 14.  The Supreme
Court has held that "summary documents, important as
they are, provide communication with beneficiaries
about the plan, but that their statements do not
themselves constitute the terms of the plan for
purposes of [ERISA] § 502(a)(1)(B)".  <u>CIGNA Corp. v.</u>
<u>Amara</u>, 131 S. Ct. 1866 (2011).  The Ninth Circuit has
since clarified that "<u>Amara</u> addressed only the
circumstance where both a governing plan document and
an SPD existed, and the plan administrator sought to
enforce the SPD's terms over those of the plan
document.  It did not address the situation . . . that
a plan administrator seeks to enforce the SPD as the
one and only formal plan document."  <u>Prichard v. Metro.</u>
<u>Life Ins. Co.</u>, 783 F.3d 1166, 1170 (9th Cir. 2015).
Accordingly, "an SPD may constitute a formal plan
document, consistent with <u>Amara</u>, so long as the SPD
neither adds to nor contradicts the terms of existing
Plan documents."  <u>Mull for Mull v. Motion Picture</u>
<u>Industry Health Plan</u>, 865 F.3d 1207, 1210 (9th Cir.
2017) (quoting <u>Prichard</u>, 783 F.3d at 1170).

Here, Plaintiff alleges that the Teamsters Plan was
not available to it prior to performing services for
the Teamsters patients.  FAC ¶ 14.  Plaintiff does not
allege any attempt to locate the Woodward and Williams
Lea Plans.  Rather, Plaintiff argues that the SPDs may
contradict unknown Plan documents that will "likely
later be available."  Pl.'s Opp'n 13:5-10, ECF No. 24.

Plaintiff's mere hypothesis that the SPDs may
contradict some unknown Plan documents with no
indication as to its efforts to obtain the Plans or how
it will obtain them in the future is insufficient.  See
Forest Ambulatory Surgical Assocs., L.P. v. United
HealthCare Ins. Co., No. 10-CV-04911-EJD, 2011 WL
2748724, at *5 (N.D. Cal. July 13, 2011) ("Failure to
identify the controlling ERISA plans makes a complaint
unclear and ambiguous.").  Moreover, the SPDs are the
only Plan documents Plaintiff can point to in arguing
it is entitled to additional benefits.  It is illogical
for Plaintiff to argue that the SPDs are not
enforceable as Plan terms and simultaneously seek to
rely on the SPDs to recover benefits.[6]

Plaintiff also argues that the SPDs cannot be
enforced because they are ambiguous as to payment
computation.  The Woodward and Williams Lea SPDs both
provide that "[b]enefits for services rendered by a
Non-Administrator Ambulatory Surgical Facility will be
provided at 40% of the Eligible Charge."  Dissen Decl.,
Ex. B at 65; id., Ex. C at 68.  The "Eligible Charge"
for non-contracting providers is the lesser of the
provider's billed charges, or the non-contracting

---

[6] The Court notes that Plaintiff's argument is inconsistent
with Plaintiff's prior position in opposition to Defendant's
first Motion to Dismiss, in which Plaintiff referred to the SPDs
and acknowledged that "there is no need for [P]laintiff's
Complaint to be amended to identify ERISA Plans that have already
been identified."  Order at 8:2-8.

eligible charge which is "developed from base Medicare reimbursements and represents approximately 300% of the base Medicare reimbursement rate . . . ."[7] Dissen Decl., Ex. B at 19; id., Ex. C at 21. The parties dispute whether the Medicare reimbursement rates exist, and as a result, whether the "Eligible Charge" should be 40% or 300% of the Medicare rates.

The Teamsters SPD states that when a Medicare reimbursement rate is not available, the "Eligible Charge" for non-participating providers shall be 50% of the standard billed charge. Opp'n at 19:8-12. The Teamsters SPD provides that the "allowed charge" for a non-network provider like Plaintiff "means the schedule that lists the dollar amounts the Plan has determined it will allow for eligible medically necessary services or supplies performed by non-network providers." Dissen Decl., Ex. A at 30. Plaintiff alleges that no such "Plan list" is provided with the SPD, and thus it is ambiguous. FAC ¶ 29.

While the parties dispute how these payment computation provisions should be interpreted, at this stage Plaintiff has alleged sufficient facts identifying the terms in the Teamsters, Woodward, and Williams Lea SPDs that plausibly may confer payments of benefits that do not render the SPDs ambiguous. See

---

[7] Plaintiff alleges that the Teamsters SPD also includes the same provisions, FAC ¶ 30, however no such provision exists in the Teamsters SPD.

<u>Salinas Valley Memorial Healthcare Sys. v. Monterey</u>
<u>Peninsula Horticulture, Inc.</u>, No. 17-cv-07076-VKD, 2018
WL 6268878, at * 5-6 (N.D. Cal. Nov. 29, 2018) (finding
that despite the parties dispute over Plan
interpretation, for pleading purposes the plaintiff had
"alleged sufficient facts identifying Plan terms that
plausibly may confer payment of benefits of more than
140% of Medicare"); <u>Downey Surgical Clinic, Inc. v.</u>
<u>Ingenix, Inc.</u>, No. CV 09-5457 PSG (CTx), 2013 WL
12114069, at *5 (C.D. Cal. Mar. 12, 2013) (finding
sufficient allegation that plans will pay for out-of-
network services in an amount lower of either the
provider's actual billed charge or the usual,
customary, and reasonable amount).

In sum, courts routinely look to SPDs to determine
assignability of benefits and have enforced AAPs within
SPDs to bar claims. <u>See</u>, <u>e.g.</u>, <u>Spinedex Physical</u>
<u>Therapy USA Inc. v. United Healthcare of Arizona, Inc.</u>,
770 F.3d 1282, 1296 (9th Cir. 2014) (affirming
determination that plaintiff lacked standing due to
anti-assignment provisions in SPDs); <u>Care First</u>
<u>Surgical Ctr. v. ILWU-PMA Welfare Plan</u>, No. CV 14-01480
MMM (AGRx), 2014 WL 12573014, at *10 (C.D. Cal. Dec.
26, 2014) (dismissing ERISA claim for lack of statutory
standing where SPD contained anti-assignment
provision). Because there are no Plan documents before
the Court other than the SPDs, the Court finds that the
Teamsters, Woodward, and Williams Lea SPDs are

unambiguous and enforceable as Plan terms.

    ii. *Patient E*

Patient E's Plan was previously unaccounted for in Plaintiff's initial Complaint. See Order at 8. Plaintiff alleges that it "has attempted to locate" the applicable ERISA Plan documents for Patient E through publicly available sources, but has been unsuccessful. FAC ¶ 14. The FAC now includes an Insurance Verification telephone record document showing Patient E's employer as UPS, Group #077323, and an allegation that ERISA Plan documents for an employer like UPS are not typically available to a medical services provider. FAC ¶¶ 12, 14; id., Ex. B. Also attached to the FAC is a letter from Blue Cross of California, confirming receipt of Plaintiff's appeal for Patient E. See FAC ¶ 13; id., Ex. C, Blue Cross Letter, ECF No. 18-3. Plaintiff argues that this letter and the Insurance Verification telephone record are sufficient to allege Patient E's Plan terms because the Insurance Verification states that "out of network coverage for a non-contracted Ambulatory Surgical Center" is 80% after deductible met and the letter states that "[a]s a non-contracted provider, the allowance assigned to this claim was based on the reasonable and customary rates for the area in which services were rendered." See id. ¶¶ 12-13; id., Exs. B-C.

These two sentences are insufficient on their own because they only convey the rates at which Plaintiff

16

could be paid, but does not establish any specific terms of Patient E's ERISA Plan that assign Patient E's benefits to Plaintiff. See Spinedex, 770 F.3d at 1289 ("As a non-participant health care provider, Spinedex cannot bring claims for benefits on its own behalf. It must do so derivatively, relying on its patients' assignments of their benefits claims."). Consequently, the Court **GRANTS** Defendant's Motion as to Patient E's claims.

> b. *Validity of the AAPs*

Plaintiff alternatively argues that should the Court enforce the SPDs, the purported AAPs are contradictory and ambiguous, and thus cannot be enforced. A plaintiff lacks standing if the relevant ERISA plan contains a valid and unambiguous AAP. See Spinedex, 770 F.3d at 1296 (affirming district court's holding that an anti-assignment provision prevented patients from assigning claims); Davidowitz v. Delta Dental Plan of Cal., Inc., 946 F.2d 1476, 1477 (9th Cir. 1991)("ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan.").

> i. *Woodward and Williams Lea AAPs*

The Woodward and Williams Lea SPDs contain identical provisions under a section titled "Payment of Claims and Assignment of Benefits," stating that "[a] Covered Person's claim for benefits under this Health Care Plan is expressly non-assignable and non-

transferable in whole or in part to any person or entity, including any Provider, at anytime before or after Covered Services are rendered to a Covered person." Dissen Decl., Ex. B, Williams Lea SPD, 106 ¶2(c); id., Ex. C, Woodward SPD, 109 ¶2(c).

Plaintiff does not dispute that this language is an AAP, but argues that there is "direct payment" language in both SPDs that contradict the anti-assignment language, stating that "[b]enefit payment will usually be sent directly to the Hospital or Physician." FAC ¶ 32. As the Court previously found, direct payments to the Provider do not afford the Provider "beneficiary" status under ERISA. See DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc., 852 F.3d 868, 875 (9th Cir. 2017) ("Neither a designation in a health benefit plan nor an assignment by a patient allowing a health care provider to receive direct payment for health services entitles a health care provider to "benefits" on its own behalf.").[8] The Court finds that in the absence of any contradicting Plan terms, the Woodward and Williams Lea SPDs contain express AAPs that are both are valid and unambiguous, and the Court

---

[8] Plaintiff brings this same "direct payment" argument with respect to the Teamsters SPD by pointing to its provision that "if a post-service claim is approved, the patient will be notified in writing on an Explanation of Benefits form ("EOB") and the provider of the medical service will be paid according to Plan benefits." Opp'n at 14:12-28. For the same reasons as the Woodward and Williams Lea SPDs, this provision also does not render any purported Teamsters' AAP ambiguous or contradictory.

**GRANTS** Defendant's Motion to Dismiss Plaintiff's claims for Patients K and M.

### ii. *Teamsters AAP*

The parties dispute the application of a clause in the Teamsters SPD's General Provisions, which states: "Participants are generally responsible for notifying the Fund of changes in family circumstances. Benefits are not assignable, although the Fund will honor qualified medical child support orders." FAC ¶ 23; Dissen Decl. Ex. A at 45. Defendant argues that this is a valid AAP. Plaintiff argues that this clause only refers to the narrow family circumstance exception, and it is ambiguous because the preceding paragraph states that "[f]or a full understanding of these provisions, you should review Article X of the Rules and Regulations." Ex. A at 45. The clause is not as explicit as the anti-assignment language seen in the Woodward and Williams Lea SPDs and it appears in its own paragraph, sandwiched in between two sentences discussing family circumstances. While it is plausible that the clause does not apply in the broad sense that Defendant argues, because it is listed under the "General Provisions" section the Court interprets its plain language to mean that generally, benefits are not assignable with the exception for "qualified medical child support orders."

Plaintiff argues the clause is contradicted by another SPD provision, which states that the Plan's

"financial responsibility for eligible benefits is generally automatically assigned to the provider." <u>See</u> Ex. A at 60, ¶3. Plaintiff conveniently does not include the remainder of this paragraph, which states that "the fact that the Plan may pay benefits directly to a provider does not give such provider 'Beneficiary' status under ERISA." <u>Id.</u> Thus, this provision only addresses to whom payments are sent, and is consistent with the anti-assignment language.

Plaintiff further argues that even if the Teamsters SPD contains a valid AAP, Defendant is duty bound to the instruction set forth in the Financial Responsibility Agreement that Plaintiff has its patients sign, which states: "This a direct assignment of my rights and benefits under my insurance plan or policy . . . ." FAC, Ex. D. But this represents an agreement between Plaintiff and its patients, and does not reflect terms of the ERISA Plan. While this agreement does demonstrate the patients' willingness to assign benefits, the "governing employee benefit plans contain non-assignment clauses that override any purported assignments."[9] <u>DB Healthcare</u>, 852 F.3d at 876.

///

---

[9] Plaintiff makes the same argument that Defendant is also duty bound under this Financial Responsibility for the Woodward and Williams Lea Plans, FAC ¶ 33, but Plaintiff's argument fails for the same reason.

c. *Waiver and Estoppel*

Plaintiff does not allege any new facts sufficient to establish waiver or estoppel. Plaintiff instead repeats its argument from its prior Opposition that, following Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc., 770 F.3d 1282 (9th Cir. 2014), an anti-assignment clause is subject to waiver and estoppel where, as here, the defendant does not assert the clause during the administrative review process. Opp'n at 22:9-12. While Spinedex does hold that as a general rule, "a court will not allow an ERISA plan administrator to assert a reason for denial of benefits that it had not given during the administrative process," the Court previously explained in its initial Order that the Ninth Circuit has since clarified that when raising an AAP to contest standing, it is not waived for failure to raise it during the claim administration process. See Order at 11:27-12:17 (citing Brand Tarzana, 706 F. App'x at 443 (finding no need to raise the AAP during the claim administration process because it is a "litigation defense, not a substantive basis for claim denial")). Because Defendant raises the AAPs as a litigation defense, Plaintiff's reliance on Spinedex is misplaced.[10]

---

[10] The only other case Plaintiff relies on is a Fifth Circuit decision, Memorial Hospital System v. Northbrook Life Ins. Co., 904 F.2d 236 (5th Cir. 1990), which bears no authority on this case.

Plaintiff's only other argument for waiver and estoppel again reasserts that Defendant was notified in Plaintiff's initial billing form that Plaintiff was asserting its claim as an assignee. Opp'n at 23:3-15. The Court already addressed this argument and found that "direct communications and payment are insufficient evidence of a clear and convincing waiver of the non-assignment provision." <u>See</u> Order at 12:18-13:25 (quoting <u>Pac. Shores Hosp. v. Backus Hosp. Med. Benefit Plan</u>, No. CV 04-7935 ABC (PLAx), 2005 WL 8154685, at *3 (C.D. Cal. May 18, 2005)). Because Plaintiff cannot adequately plead waiver or estoppel, the Teamsters, Woodward, and Williams Lea AAPs are enforceable and Plaintiff lacks standing to state a claim under ERISA.

    d.  *Leave to Amend*

Rule 15(a) provides that a party may amend their complaint once "as a matter of course" before a responsive pleading is served. Fed. R. Civ. P. 15(a). After that, the "party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires." <u>Id.</u> But if any amendment to the pleadings would be futile, leave to amend should not be granted. <u>See</u> <u>Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.</u>, 368 F.3d 1053, 1061 (9th Cir. 2004) (quoting <u>Saul v. United States</u>, 928 F.2d 829, 843 (9th Cir. 1991)).

Defendant filed a Motion to Dismiss Plaintiff's initial Complaint, which the Court granted with leave to amend. As to Patient E, the Court was clear in its Order that Plaintiff needed to allege the terms of Patient E's ERISA Plan entitling it to benefits, but Plaintiff still did not cure this deficiency. Because Plaintiff alleges that ERISA Plan documents for an employer like UPS are not typically available, leave to amend would likely be futile and the Court **DENIES LEAVE TO AMEND** as to Plaintiff's claim for Patient E. <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992) (noting a district court's discretion to deny leave to amend is particularly broad where it has afforded the plaintiff one or more opportunities to amend).

As to the Woodward and Williams Lea Plans, Plaintiff does not allege that there are Plan terms it has not been able to locate that would contradict the SPDs' anti-assignment language. Because the Court rejects Plaintiff's allegations that other SPD provisions contradict the AAPs, any amendment would likely be futile and the Court **DENIES LEAVE TO AMEND** as to Plaintiff's claims for Patients K and M. However, unlike the Woodward and Williams Lea AAP, Plaintiff argues that the Teamsters' clause at issue is not an AAP. While Plaintiff still has not provided any Teamsters Plan terms other than the SPD, the Court is hesitant at this stage to definitively hold that the Teamsters AAP is valid and unambiguous because it is at

least plausible that the "Rules and Regulations" of the Plan, which the SPD references, elaborate on whether the clause applies generally or only to the family circumstance exception. Because Plaintiff argues it is likely able to obtain the Teamsters Plan, Plaintiff will be allowed one final amendment.[11] As such, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's claims under the Teamsters Plan **WITH LEAVE TO AMEND.**

### III. CONCLUSION

Based on the foregoing, the Court**:** (1) **GRANTS** Defendant's Motion **WITHOUT LEAVE TO AMEND** as to Plaintiff's claims for Patient E, and Patients K and M under the Woodward and Williams Lea Plans; and (2) **GRANTS** Defendant's Motion **WITH LEAVE TO AMEND** as to Plaintiff's claims under the Teamsters Plan. Plaintiff shall have **21 days** from this date to file a Second Amended Complaint.

**IT IS SO ORDERED.**

DATED: February 27, 2019          s/ RONALD S.W. LEW

                                  **HONORABLE RONALD S.W. LEW**
                                  Senior U.S. District Judge

---

[11] As Defendant points out, both ERISA and the SPDs provide a mechanism for an authorized representative of the patients to obtain Plan documents, and the patients themselves either possess the documents or have access to them pursuant to 29 U.S.C. § 1024(b)(4).